Hugh MARLOWE, Appellant,

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

March 20, 1986.

Rehearing Denied June 12, 1986.

Jack Emory Farley, Public Advocate, M. Gail Robinson, Kevin M. McNally, Asst. Public Advocates, Frankfort, for Appellant.

David Armstrong, Atty. Gen., Penny R. Warren, Cicely D. Jaracz, Asst. Attys. Gen., Frankfort, Ron Johnson, Commonwealth Atty., Harlan, for Appellee.

STEPHENS, Chief Justice.

Appellant Hugh Marlowe appeals his conviction for murder and robbery and his subsequent sentence to death. We affirm the judgment of the Harlan Circuit Court.

Appellant was indicted on November 23, 1981 for murder and ten days later was indicted for first degree robbery. Both charges arose out of the same incident involving the death of seventy-eight year old Henry Hamlin. On the evening of his arrest appellant gave a statement to a police detective that he and George Owens had been present when a friend, Larry Wilkerson, killed and robbed the victim. He claimed that the victim had been shooting at two beer cans across some railroad tracks in a remote part of Harlan County when appellant, Owens, and Wilkerson came upon Hamlin. After firing three

times at the cans, Hamlin gave Wilkerson permission to shoot the pistol. Appellant told the detective that instead of shooting the cans, Wilkerson shot Hamlin in the chest, beat his head with the gun and then robbed him. A few weeks later, appellant and his counsel requested a meeting with the same detective and the prosecutor. During this second meeting appellant exonerated the man whom he initially claimed had actually committed the murder.

At pre-trial hearing on March 26, 1982, appellant expressed his desire to enter a plea of guilty to the murder charge and a plea of not guilty to the robbery charge. Marlowe admitted shooting the victim but denied beating or robbing him. The prosecutor was not present at this hearing. Appellant's counsel stated that he understood that the Commonwealth Attorney would recommend a life sentence in return for Marlowe's guilty plea. After talking extensively with appellant about the circumstances surrounding the victim's death, the judge set the sentencing date for April 1, 1982. Four days after the hearing the prosecutor first learned of its occurrence and informed the court that he had not made a firm recommendation as to sentence and that he could not agree to a guilty plea only on the murder charge. The prosecutor's only recommendation would be the death penalty. Based on this turn of events, the court allowed appellant to withdraw his guilty plea and stated that appellant's statement could not be used against him at trial.

Trial began May 4, 1982 before the judge who had presided over all the pre-trial proceedings. Two of the Commonwealth's witnesses testified to seeing men on the railroad tracks at about 8:00 a.m. on November 13, 1981. Another witness who lived near the railroad tracks said that on the same morning she heard three shots in succession and then thirty to sixty seconds later she heard a fourth shot that "sounded real funny". The victim's wife then described her husband's habit of taking morning walks on the railroad tracks. She stated that her husband walked with a cane and wore glasses and an ear flap hat. She

testified that he wore a wedding band, two Masonic rings, a gold watch and that he carried a cigarette case and a wallet with about $100.00 in it. Also, Mrs. Hamlin stated that her husband carried a .22 caliber Strouger Luger. Mrs. Hamlin testified that on the date of his death Hamlin left for his walk at about 9:15 a.m.

The deputy coroner read into the record the autopsy report which stated that the victim's death was due to "cranial trauma" —he had received seven head wounds inflicted by a blunt instrument. The report also stated that a gunshot wound to the chest was an "additional significant injury".

George Owens, who was charged with the same offenses as appellant, was then called to the witness stand by the Commonwealth. In the midst of swearing in the witness, the court told Owens that he could confer with his counsel before he was questioned by the Commonwealth. Counsel informed the court that he had already conferred with his client. The Commonwealth began its examination of the witness and in response to questions, Owens gave his name and age. At that point, Owen's counsel invoked the Fifth Amendment privilege against self-incrimination on behalf of his juvenile client. Owens was then excused.

Appellant's brother, James Marlowe, then testified that he saw appellant and George Owens digging potatoes at about 9 a.m. on November 13, 1981. That afternoon James saw Owens with two fifty dollar bills. Owens told James that he was in trouble and was going to Ohio and that appellant was going with him. Owens asked James to buy a car for the purpose of going to Ohio.

Tony Mallory, an inmate jailed with appellant and Owens, was the Commonwealth's final witness. Over defense objection Mallory was permitted to testify to a conversation he overheard in the jail between appellant and Owens on February 20, 1982. Appellant accused Owens of "turning state's evidence" on him. Owens denied "ratt[ing]" and appellant said if he

did they would "both burn". Mallory stated that during the course of the conversation appellant admitted asking the victim for his gun and then shooting him. Appellant also stated to Mallory that he and Owens panicked and beat the victim with a club or baseball bat.

The jury found appellant guilty of murder and robbery during the guilt phase of the bifurcated proceedings. During the sentencing phase the jury recommended death because of the aggravating circumstance of the murder having been committed during the course of a robbery. Before sentencing, the court on its own motion ordered a psychological examination to determine appellant's personality type and potential for rehabilitation.

At the final sentencing on July 29, 1982, the trial judge read the psychologist's report, with both parties consent. Initially, neither the Commonwealth nor the defense wanted to question the psychologist, however, the Commonwealth decided to question the expert witness. The psychologist testified that the appellant denied committing the crime and showed no remorse. The prosecutor then asked whether the psychologist was aware that appellant had admitted shooting the victim. [The prosecutor was referring to appellant's admission in the withdrawn guilty plea.] The psychologist did not know of the admission. The court sentenced appellant to death after considering all the evidence, the presentence report, and the psychologist's report. The court also stated that it had considered that appellant had tricked the victim to obtain his pistol, then shot, beat, and robbed the victim.

The facts will be discussed in greater detail where specific issues are reviewed. Appellant raised thirty-seven (37) issues on appeal. Though we have carefully considered all of them, only certain issues will be discussed in this opinion. All others are meritless.

We will discuss the following issues from the guilt phase of the trial:

—Whether the trial judge erred in failing to recuse himself from the case because of the information he learned while presiding over the guilty plea which was subsequently withdrawn,

—Whether sufficient evidence to sustain a conviction of murder and first degree robbery was presented at trial,

—Whether appellant was denied his right to confrontation when a person charged with the same offense as appellant asserted his privilege against self-incrimination in front of the jury.

—Whether the death sentence was based on the necessary finding that appellant caused or intended to cause the death of the victim, and

—Whether the prosecutor's conduct during closing argument was improper or prejudicial.

The issues to be discussed from the sentencing phase of the trial are as follows:

—Whether the trial court erred in ordering a post-trial psychological examination of appellant,

—Whether the penalty phase jury instructions failed to inform the jury of life sentence options,

—Whether the prosecutor's conduct during the penalty phase and final sentencing deprived appellant of a fair trial,

—Whether appellant's sentence of death is disproportionate as compared with other recent cases.

WHETHER THE TRIAL JUDGE ERRED IN FAILING TO RECUSE HIMSELF BECAUSE OF INFORMATION HE LEARNED WHILE PRESIDING OVER THE SUBSEQUENTLY WITHDRAWN GUILTY PLEA.

■ Appellant first contends that the trial judge should have recused himself *sua sponte* because of information he learned from appellant during the aborted guilty plea hearing. In response to the judge's questions, appellant admitted that George Owens handed him the victim's gun and that he shot Hamlin. Appellant also stated that he did not know why he did it. Appellant alleges that the judge relied on this information when sentencing him to death.

KRS 26A.015(2)(a) and (e) mandate that a judge disqualify himself if he has "personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts..., or has expressed an opinion concerning the merits of the proceeding..." or has "knowledge of any other circumstances in which his impartiality might reasonably be questioned". This statute does not apply to the case at bar. If it did a judge would be required to recuse himself from subsequent proceedings whenever he presided over suppression hearings, guilty pleas, or trials. Here there is no evidence of actual bias or impartiality, only bare speculation.

We adopt the Ninth Circuit's view as expressed in *United States v. Winston*, 613 F.2d 221, 223 (1980):

"... [R]ecusal is appropriate only when the information is derived from an extrajudicial source. Knowledge obtained in the course of earlier participation in the same case does not require that a judge recuse himself."

WHETHER THE EVIDENCE PRESENTED WAS SUFFICIENT TO SUSTAIN A CONVICTION OF MURDER AND FIRST–DEGREE ROBBERY.

■ The next issue concerns the sufficiency of the evidence to support the murder charge and the first-degree robbery charge. The Commonwealth offered evidence which, taken as a whole, was sufficient for the jury to find appellant guilty beyond a reasonable doubt on both charges. The following evidence sustains the murder conviction: Witnesses saw appellant near the time of the incident on the railroad tracks. Appellant initially blamed another man for the crime and later retracted those statements. Jail inmate, Tony Mallory, testified to appellant's candid admission while in jail of shooting and beating Hamlin.

The evidence concerning the robbery is as follows: The victim's wife testified that a gold watch, wedding band, Masonic rings, and wallet containing $100.00 were in her husband's possession when he left for his walk the day he was killed. None of those items were located when the victim's body was recovered. Appellant's statements inculpating a third party, whom he later exonerated, contained a description of robbing the victim of these items. Appellant's brother testified that on the afternoon the crime occurred George Owens, also present during the slaying, gave him two fifty dollar bills and requested that he buy a car for Owens and appellant. Though appellant was not in possession of any of the stolen items at his arrest, the evidence was more than sufficient to meet the standard for evidence announced in *Trowel v. Commonwealth*, Ky., 550 S.W.2d 530, 533 (1977):

"If under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal."

See also *Commonwealth v. Sawhill*, Ky., 660 S.W.2d 3, 4 (1983).

Despite the absence of direct evidence, the jury could reasonably find appellant guilty from the totality of the evidence.

WHETHER APPELLANT WAS DENIED HIS RIGHT TO CONFRONTATION WHEN A PERSON CHARGED WITH THE SAME OFFENSE AS APPELLANT WAS PERMITTED TO ASSERT THE PRIVILEGE AGAINST SELF–INCRIMINATION ON THE WITNESS STAND.

■ Appellant contends that he was denied his right to confrontation when George Owens was allowed to take the witness stand and then to assert the privilege against self-incrimination. However, the instant case is distinguishable from cases cited by appellant.

In *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), the United States Supreme Court determined that petitioner had been denied the right to confront witnesses against him. In *Douglas* the petitioner and another man were both indicted for assault with intent to murder and were tried separately. The co-indictee was found guilty and was then called by the state to testify at petitioner's trial.

Intending to appeal his conviction, the co-indictee refused to answer questions. The trial judge permitted him to be examined as a hostile witness and the state then began reading the co-indictee's alleged confession, often pausing to ask the witness if he had made the statement. With each question the witness asserted the privilege against self-incrimination. Unlike the situation in the present case, the petitioner in *Douglas* was thus subject to a lengthy interrogation concerning the crime. The document containing the witness' alleged confession was the only direct evidence that petitioner assaulted the victim.

In *Higgs v. Commonwealth,* Ky., 554 S.W.2d 75 (1977), the judgment was reversed because a co-indictee witness invoked the Fifth Amendment in response to a question asking whether Higgs had said he "ripped off" a store. The prosecutor had prior knowledge that the witness would claim her testimonial privilege; thus compounding the error. In *Commonwealth v. Brown,* Ky., 619 S.W.2d 699 (1981), the Court cited *Higgs,* when it affirmed the dismissal of a murder indictment. In *Brown,* four men were accused of burglarizing a home where a murder occurred. Two of the men confessed to the burglary and declared a third to be the murderer. The Commonwealth sought the testimony of the two men against the third and, knowing that they intended to assert the Fifth Amendment, planned to introduce their prior confessions.

In contrast to these cases, there is no showing in the case at bar that the trial court or the prosecutor knew the witness would claim the privilege against self-incrimination. Though other witnesses referred to Owen's part in the murder, Owens was not asked even one question concerning the death of Henry Hamlin. Furthermore, Owen's testimony was not critical to the prosecution's case; there was sufficient evidence for conviction apart from any assumptions the jury may have made concerning Owen's refusal to testify. Thus, given the totality of the circumstances, if any error occurred in allowing Owens to testify, it was harmless.

WHETHER THE SENTENCE WAS BASED ON THE FINDING THAT APPELLANT CAUSED OR INTENDED TO CAUSE THE VICTIM'S DEATH.

■ Appellant argues that the jury's verdict failed to find that appellant "kill[ed] or intend[ed] to kill" the victim, which is necessary for the imposition of the death penalty. *Edmund v. Florida,* 458 U.S. 782, 789, 102 S.Ct. 3368, 3372, 73 L.Ed.2d 1140 (1982).

The jury returned a guilty verdict under the following murder instruction:

"You will find the Defendant Hugh Marlowe guilty under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

(a) That in Harlan County, Kentucky on or about 13th day of [N]ovember 1981, and before the finding of the indictment herein, he killed Henry Hamblin (sic) by shooting him and beating him. AND

(b) That in so doing he caused Henry Hamblin's (sic) death intentionally and not while acting under the influence of extreme emotional disturbance for which there was a reasonable justification or excuse under the circumstances as he believed them to be. AND

(c) That in so doing he was not privileged to act in self-protection.

If you find the Defendant guilty under this instruction, you shall say in your verdict only that you find him guilty under Instruction 1, and return the verdict to the Court without deliberating on the question of fixing the punishment."

The jury also returned a guilty verdict under the following first-degree robbery instruction:

"You will find the Defendant, Hugh Marlowe, guilty of First Degree Robbery under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

(a) That in Harlan County, Kentucky on or about the 13th day of November 1981, and before the finding of the indictment herein, he stole personal items of personal property from Henry Hamblin (sic)

AND

(b) That in the course of so doing and with intent to accomplish the theft he caused physical injury to Henry Hamblin (sic) by shooting and striking him with a firearm.

If you find the Defendant guilty under this instruction you will fix his punishment at confinement in the penitentiary for not less than 10 years nor more than 20 years, in your discretion."

We hold that a unanimous verdict based on these instructions adequately and properly considered appellant's intent to kill and rob.

The appellant, however, contends that the presence of the following aiding and abetting instruction, sandwiched between a definitional section and a reasonable doubt and presumption of innocence section, renders the verdict improper:

"An Aider and Abetter is one who intentionally, willfully and knowingly endorses, counsels, aids, assists and encourages the performance of an act forbidden by law during the performance of such illegal act.

The Court instructs the Jury that if it believes from the evidence beyond a reasonable doubt, that Hugh Marlowe aided and abetted George Owens in the matter of which you have received evidence you will consider him as a principal defendant and equally liable."

Appellant claims that this instruction permitted the jury to impose the death penalty even if it found that appellant merely helped George Owens kill and rob the victim, and not that appellant actually killed or intended to kill the victim.

We feel that the murder and first-degree robbery instructions to the jury were constitutionally sound. Even if the aiding and abetting instruction factored into the determination of murder, there is no error. Under the language of the instruction, the jury had to find that appellant "intentionally, willfully, and knowingly" aided Owens and this is a finding of sufficient intent to convict appellant of murder. *See Luttrell v. Commonwealth*, Ky., 554 S.W.2d 75, 79 (1977).

Furthermore, the instant case is distinguishable from *Enmund v. Florida*, which appellant claims is dispositive. In *Enmund*, the United States Supreme Court held that an abettor to a felony "who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed" cannot constitutionally have the death penalty imposed on him. *Enmund, Id.* 458 U.S. at 797, 102 S.Ct. at 3376. The focus must be on each individual's culpability. *Id.* at 798, 102 S.Ct. at 3377. In applying this standard to appellant Marlowe we reach a different result than did the United States Supreme Court in the *Enmund* case. Enmund was convicted under a felony murder theory where there was no requirement of a finding of guilt based on intentional murder; Marlowe was convicted of intentional murder. Enmund was waiting in a getaway car 200 yards from the site where the murders occurred. The jury under the facts previously recited and the instructions given could have easily believed that Marlowe killed Hamlin.

Thus, specific culpability was proven. The instructions to the jury and the jury's verdict were proper in this case.

WHETHER THE PROSECUTOR'S CONDUCT DURING CLOSING ARGUMENT WAS REVERSIBLE ERROR.

█ Appellant argues that many comments made by the Commonwealth during the closing argument at the guilty phase were improperly prejudicial. The prosecutor told the jury that appellant had walked a "demonic and satanic" trail and made other references to religion. He also stated that he wished there were more graphic evidence such as the smell of blood and the ability to watch Mrs. Hamlin search for her husband. The prosecutor then began cry-

ing and told the jury that he represented the Commonwealth and the victims of crimes.

However, as we have stated before, "[o]utrageous conduct warrants stronger words than might otherwise be justified." *Timmons v. Commonwealth*, Ky., 555 S.W.2d 234, 241 (1977). We find that the prosecutor did not exceed the reasonable latitude allowed in persuading the jurors that the matter should not be dealt with lightly. *Lynem v. Commonwealth*, Ky., 565 S.W.2d 141, 145 (1978).

We hold that any error committed by the prosecutor was harmless to appellant when striking the "balance between disciplining the prosecutor on the one hand, and the interest of the prompt administration of justice and the interests of the victims on the other." *United States v. Hastings*, 461 U.S. 499, 509, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1983).

> "[T]here can be no such thing as an error free, perfect trial, and that the Constitution does not guarantee such a trial." *Id.*, at 508, 509, 103 S.Ct. at 1980.

> "The question a reviewing court must ask is this: absent the prosecutor's [conduct], is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?" *Id.*, at 510, 511, 103 S.Ct. at 1981.

We believe after reviewing the record that the jury would have returned the same verdict of guilty even without the prosecutor's comments.

Now we turn to a consideration of the issues from the trial's sentencing phase.

WHETHER THE TRIAL COURT ERRED IN ORDERING A POST-TRIAL PSYCHOLOGICAL EXAMINATION OF APPELLANT.

■ Appellant contends that he was denied his Fifth and Sixth Amendment rights when the trial judge ordered him to submit to a psychological exam and "misled him" concerning the content and use of the test. The trial judge *sua sponte* ordered the tests, expecting them to be helpful in sentencing the appellant. The psychological examination undoubtedly helped the trial judge assess the jury's recommendation of death. We find that under the circumstances the use of the psychological testimony was within the sound discretion of the trial judge and, that there is no error.

Based on *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), appellant claims that *Miranda* warnings must be given prior to a psychological exam if the results are to be admitted in the penalty phase of a capital case. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Further, appellant claims that if the defendant does comply, the Fifth Amendment privilege must have been knowingly and voluntarily waived and that the Sixth Amendment right to counsel attaches during a psychological examination.

However, *Estelle* is factually distinguishable from the case at bar. In *Estelle*, the court ordered a psychiatric examination to determine the respondent's competency to stand trial on the charge of murder and the prosecution then used the psychiatric testimony during the sentencing phase as evidence of future dangerousness, an additional element. The respondent's attorney knew that the exam results would be used to determine his client's competency but was unaware the testing results would also be applied to the future dangerousness issue. Also, the respondent did not know the examination results would be applied to the sentencing phase of the trial. Under these circumstances, the court in *Estelle*, held that the prosecution could admit the psychiatric evidence to establish the prerequisites to impose death only "if respondent had been apprised of his rights and had knowingly decided to waive them." *Id.* 451 U.S. at 469, 101 S.Ct. at 1876.

In contrast, the results of the testing in the case at bar were used for the precise purpose for which they had been ordered. Marlowe's attorney knew the intended use of the psychological exam and was able to advise his client. Furthermore, the record clearly shows that appellant was warned

that any statement he made to the psychologist could be used against him.

The trial judge has statutory authorization for ordering a psychological examination. Kentucky Revised Statute 532.050(3), which details the presentence procedure for felony conviction, states that,

"[b]efore imposing sentence for a felony conviction, the court may order the defendant to submit to psychiatric observation and examination for a period not exceeding sixty (60) days."

The trial judge must be given wide latitude to accomplish the penalty-setting task. Thus, the psychological exam was soundly within his discretion.

WHETHER THE PENALTY PHASE INSTRUCTIONS ADEQUATELY INFORMED THE JURY OF ALL THE SENTENCING OPTIONS.

■ Appellant contends that the penalty phase instructions failed to inform the jury that a life sentence could be imposed even though the aggravating circumstances were found to be true.

This argument does not withstand a review of the instructions given. The first instruction gave the jury three options:

"Pursuant to the verdict returned by you finding the defendant guilty of murder, and under the evidence presented to you in both stages of this trial proceeding, you shall recommend to the court one of the following three verdicts: (1) a term of 20 years or more in the penitentiary; (2) a term of life imprisonment in the penitentiary; or (3) death. For your convenience, a form for each of these alternatives is provided at the end of these instructions."

After properly instructing the jury on aggravating circumstances and mitigating circumstances, the court gave the following instruction:

"(a) If you have a reasonable doubt as to the truth or existence the "aggravating circumstances" listed in Instruction No. 10, you shall not make any finding with respect to it.

"(b) *If upon the whole case you have a reasonable doubt whether the defendant should be sentenced to death, you shall recommend a sentence of imprisonment instead."* (emphasis added).

Then finally the court instructed on the following authorized sentences:

"You may recommend that the defendant be sentenced (a) to confinement in the penitentiary for a term of 20 years or more; (b) to confinement in the penitentiary for life; or (c) to death, in your discretion, *but you cannot recommend that he be sentenced to death unless you are satisfied from the evidence beyond a reasonable doubt that the statement listed in Instruction No. 10 (aggravating circumstances) is true in its entirety,* in which event you must designate in writing, signed by the foreman, the aggravating circumstances you found beyond a reasonable doubt to be true." (emphasis added).

These instructions adequately portrayed the jury's sentencing options and there was no confusion over the discretion to impose a life sentence even if an aggravating circumstance exists. The instructions met the constitutional requirements set forth in *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Therefore, we find no error.

WHETHER THE PROSECUTOR'S CONDUCT DURING THE PENALTY PHASE WAS REVERSIBLE ERROR.

■ Appellant complains of the prosecutor's conduct in the closing argument at the penalty phase of the trial. The prosecutor again made references to some religious matters and to such things as "decent people being pushed around too long". These arguments fall within the permissible boundaries allowed to the Commonwealth to try the case.

Appellant also contends that the prosecutor erroneously interjected his personal opinion into the argument. However, the prosecutor may express his view of defendant's guilt "as long as it is based upon the evidence in the case". *Koonce v. Com-*

 

*monwealth,* Ky., 452 S.W.2d 822, 826 (1970). These comments were so based.

WHETHER APPELLANT'S SENTENCE OF DEATH WAS ARBITRARY, OR DISPROPORTIONATE WHEN COMPARED TO RECENT CASES.

In making the review necessitated by KRS 532.075(3), we find nothing in the record to show that appellant's sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. Also, the evidence supports the jury's finding of first-degree robbery, one of the aggravating circumstances enumerated in KRS 532.025(2). The death sentence is not excessive or disproportionate to the penalty imposed in similar cases since 1970, considering both the crime and the defendant. The cases reviewed are: *Scott v. Commonwealth,* Ky., 495 S.W.2d 800 (1973); *Leigh v. Commonwealth,* Ky., 481 S.W.2d 75 (1972); *Lenston and Scott v. Commonwealth,* Ky., 497 S.W.2d 561 (1973); *Call v. Commonwealth,* Ky., 482 S.W.2d 770 (1972); *Caldwell v. Commonwealth,* Ky., 503 S.W.2d 485 (1972); *Tinsley and Tinsley v. Commonwealth,* Ky., 495 S.W.2d 776 (1973); *Galbreath v. Commonwealth,* Ky., 492 S.W.2d 882 (1973); *Caine and McIntosh v. Commonwealth,* Ky., 491 S.W.2d 824 (1973); *Hudson v. Commonwealth,* Ky., 597 S.W.2d 610 (1980); *Meadows v. Commonwealth,* Ky., 550 S.W.2d 511 (1977); *Self v. Commonwealth,* Ky., 550 S.W.2d 509 (1977); *Boyd v. Commonwealth,* Ky., 550 S.W.2d 507 (1977); *Smith v. Commonwealth,* Ky., 599 S.W.2d 900 (1980); *Gall v. Commonwealth,* Ky., 607 S.W.2d 97 (1980); *McQueen v. Commonwealth,* Ky., 669 S.W.2d 519 (1984); and *White v. Commonwealth,* Ky., 671 S.W.2d 241 (1984); *Ice v. Commonwealth,* Ky., 667 S.W.2d 671 (1984); *Harper v. Commonwealth,* Ky., 694 S.W.2d 665 (1985); *Skaggs v. Commonwealth,* Ky., 694 S.W.2d 672 (1985); *Ward v. Commonwealth,* Ky., 695 S.W.2d 404 (1985); *Kordenbrock v. Commonwealth,* Ky., 700 S.W.2d 384 (1985); *Holland and James v. Commonwealth,* Ky., 703 S.W.2d 876 (1985). Appellant's gruesome murder of Hamlin and the robbery of

victim's possessions exceed the standard for imposing death.

Thus, the conviction of the Harlan Circuit Court is affirmed.

All concur.