COMMONWEALTH of Kentucky, Appellant,

v.

Frank ELDRED, Appellee.

No. 96–SC–788–TG.

Supreme Court of Kentucky.

March 19, 1998.

As Modified on Denial of Rehearing Sept. 3, 1998.

A.B. Chandler, III, Attorney General, David A. Sexton, David A. Smith, Paul D. Gilbert, Assistant Attorneys General, Criminal Appellate Division, Frankfort, for Appellant.

Marie Allison, Assistant Public Advocate, Department for Public Advocacy, Frankfort, for Appellee.

JOHNSTONE, Justice.

We address a single issue in this appeal: whether the holding of *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), precludes the Commonwealth from seeking the death penalty at a defendant's retrial, where during the penalty phase of the defendant's first trial the jury found, beyond a reasonable doubt, the existence of a statutory aggravating factor but did not recommend a sentence of death.

In *Eldred v. Commonwealth*, Ky., 906 S.W.2d 694 (1995), we overturned Frank Eldred's conviction of first-degree arson and murder for reasons unrelated to this appeal. The Commonwealth sought the death penalty at Eldred's first trial. During the penalty phase of his trial, the jury found the statutory aggravating circumstance of murder for profit and designated this finding in writing. The jury recommended a sentence of life without the possibility of parole for twenty-five years (hereinafter Life–25), rather than death. Subsequently, the trial court imposed a sentence of Life–25 for the murder conviction.

Upon retrial, the Commonwealth notified Eldred that it would again seek the death penalty. Eldred moved the trial court to prohibit the Commonwealth from seeking the death penalty under the authority of *Bullington, supra*, and *Arizona v. Rumsey*, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984). The trial court granted Eldred's motion. The Commonwealth appealed the trial court's ruling to this court. We find that Kentucky's capital sentencing procedure does not bar the Commonwealth from seeking the death penalty at Eldred's new trial. We, therefore, reverse.

### THE GENERAL RULE

*Stroud v. United States*, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919), has long stood for the proposition that the Double Jeopardy Clause does not prevent a defendant whose conviction is reversed from receiving a more severe sentence upon retrial than he received at his first trial. The *Stroud* Court found that the imposition of the death penalty at retrial, after the defendant had received a lesser sentence for the same offense at a previous trial, did not place the defendant in second jeopardy within the meaning of the United States Constitution. *Id.* at 18, 40 S.Ct. at 51–52, 64 L.Ed. at 103. This general principle was reaffirmed in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The principle that the Double Jeopardy Clause is no bar to receiving a more severe sentence at retrial was again reaffirmed in *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973) and *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). The same principle has been affirmed by this Court as well. *See, e.g., Bruce v. Commonwealth*, Ky., 465 S.W.2d 60 (1971).

### THE BULLINGTON EXCEPTION

Six months after *DiFrancesco* was decided, the Supreme Court decided *Bullington*, and, for the first time, held that the protection of the Double Jeopardy Clause applied equally to sentencing and to determinations of guilt or innocence. *Bullington* at 449, 101 S.Ct. at 1863–64, 68 L.Ed.2d at 286 (Powell, J. dissenting). In *Bullington*, the defendant was found guilty of capital murder at his first trial. During the penalty phase of his first trial, the jury was given only two sentencing options: death or life without eligibility for probation or parole for 50 years. The jury returned a verdict of life without eligibility for probation or parole for 50 years. The defendant then successfully appealed his conviction and was granted a new trial. Upon retrial, the prosecution gave notice to the defendant that it would again seek the death penalty.

The *Bullington* Court held that the imposition of the death penalty at the defendant's new trial was barred by the Fifth Amendment to the United States Constitution "[b]ecause the sentencing proceeding at [the defendant's] first trial was like the trial on the question of guilt or innocence, the protection afforded by the Double Jeopardy Clause to one acquitted by a jury also is available to him, with respect to the death penalty, at his

retial." *Bullington* at 446, 101 S.Ct. at 1862, 68 L.Ed.2d at 284. At the heart of the Court's reasoning was that the Missouri capital sentencing procedure explicitly required a jury to determine whether the prosecution had "proved its case." *Id.* at 444, 101 S.Ct. at 1860–61, 68 L.Ed.2d at 282. Subsequent cases make clear that "the case" that the prosecution failed to prove in *Bullington* was whether Bullington deserved the death penalty. *See, e.g., Poland v. Arizona,* 476 U.S. 147, 153 n. 3, 106 S.Ct. 1749, 1754 n. 3, 90 L.Ed.2d 123, 131 n. 3 (1986). Thus, the question we answer today is whether Kentucky's capital sentencing procedure so closely resembles Missouri's capital sentencing procedure that Eldred's sentence of Life–25 at his first trial precludes the Commonwealth from seeking the death penalty at Eldred's retrial, due to the Commonwealth's failure to prove that Eldred deserved the death penalty at his first trial.

*Bullington* was reaffirmed in *Arizona v. Rumsey, supra.* In *Rumsey,* the defendant was sentenced to death at retrial after having been sentenced to life without parole for 25 years at his first trial. The *Rumsey* Court concluded that *Bullington* controlled and, therefore, the imposition of the death penalty violated the Double Jeopardy Clause. *Rumsey* at 210, 104 S.Ct. at 2309–10, 81 L.Ed.2d at 171. The *Rumsey* Court reached this conclusion by comparing Arizona's capital sentencing procedure to Missouri's capital sentencing procedure as described in *Bullington.* The *Rumsey* Court first identified the characteristics of the Missouri capital sentencing procedure that made it comparable to a trial for purposes of the Double Jeopardy Clause:

> **The discretion of the sentencer**—the jury in Missouri—is restricted to precisely two options: death, and life imprisonment without possibility of release for 50 years. In addition, the sentencer is to make its decision guided by substantive standards and based on evidence introduced in a separate proceeding that formally resembles a trial. Finally, the prosecution has to prove certain statutorily defined facts beyond a reasonable doubt in order to support a sentence of death.

*Rumsey* at 209, 104 S.Ct. at 2309, 81 L.Ed.2d at 170 (emphasis added). The *Rumsey* Court then set forth the characteristics of the Arizona capital sentencing procedure that likewise made it comparable to a trial for purposes of the Double Jeopardy Clause:

> **The sentencer**—the trial judge in Arizona—is required to choose between two options: death, and life imprisonment without possibility of parole for 25 years. The sentencer must make the decision guided by detailed statutory standards defining aggravating and mitigating circumstances; in particular, death may not be imposed unless at least one aggravating circumstance is found, whereas death must be imposed if there is one aggravating circumstance and no mitigating circumstance sufficiently substantial to call for leniency. The sentencer must make findings with respect to each of the statutory aggravating and mitigating circumstances, and the sentencing hearing involves the submission of evidence and the presentation of argument. The usual rules of evidence govern the admission of evidence of aggravating circumstances, and the State must prove the existence of aggravating circumstances beyond a reasonable doubt.

*Rumsey* at 209–210, 104 S.Ct. at 2309–10, 81 L.Ed.2d at 170–171 (emphasis added).

Because of the similarities between the two sentencing procedures, the *Rumsey* Court found that Arizona's capital sentencing procedure was indistinguishable from Missouri's for purposes of the Double Jeopardy Clause. *Id.* at 210, 104 S.Ct. at 2309–10, 81 L.Ed.2d at 171. The *Rumsey* Court ultimately held that "[a]pplication of the *Bullington* principle renders respondent's death sentence a violation of the Double Jeopardy Clause because respondent's initial sentence of life imprisonment was undoubtedly an acquittal on the merits of the central issue in the proceeding—whether death was the appropriate punishment for respondent's offense." *Id.* at 211, 104 S.Ct. at 2310, 81 L.Ed.2d at 171.

Kentucky's capital sentencing procedure shares a number of characteristics with both Missouri's and Arizona's capital sentencing procedures that were found to be determinative by the *Rumsey* Court: Kentucky has a

bifurcated proceeding for sentencing in capital cases; the jury is guided by detailed statutory guidelines as to aggravating and mitigating circumstances; the death penalty cannot be recommended by a jury unless it finds the presence of least one of the statutory aggravating factors and so designates this finding in writing; the sentencing hearing involves the submission of evidence and presentation of argument in a trial-like proceeding; and the Commonwealth has the burden of proving beyond a reasonable doubt the existence of any aggravating factors. The only discernible and relevant difference between Kentucky's capital sentencing procedure and the procedures of Missouri and Arizona, is that, under Kentucky's procedure, the jury is not restricted to only two choices in the range of punishment that it may recommend. In Kentucky, upon finding a defendant guilty of a capital crime, the jury may recommend death, life without possibility of parole for 25 years, life imprisonment, or a term of years not less than 20 years. KRS 532.030(1).

There are two important exceptions to the general rule set forth in *Stroud* and reaffirmed in *Pearce*. *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), held that a defendant convicted of second-degree murder, who successfully attacks his conviction on appeal, cannot be convicted of first-degree murder at retrial. *Green* established the principle that conviction of a lesser-included offense operates as an implied acquittal of the greater offense. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), held that a defendant may not be retried if he obtains a reversal of his conviction on the ground that the evidence presented against him at trial was legally insufficient to convict him. The *Bullington* Court found that both the exceptions of *Burks* and *Green* applied to its case at bar and relied on these exceptions to establish the exception it created in *Bullington*. *Bullington* at 444–445, 101 S.Ct. at 1860–1862, 68 L.Ed.2d at 282–283. Thus, the *Bullington* exception to the general rule of

*Stroud* and *Pearce* can be viewed as resting on either of two alternative grounds [1]: 1) unless the State produces sufficient evidence to support the death penalty at a defendant's first trial, the Double Jeopardy Clause prevents the State from seeking the death penalty at retrial; and/or 2) a sentence of less than death acts as an implied acquittal of death penalty. We find that, because neither the exception of *Burks* or *Green* applies to Kentucky's capital sentencing procedure, *Bullington* does not preclude the Commonwealth from seeking the death penalty against Eldred at his new trial.

## SUFFICIENCY OF THE EVIDENCE: THE BURKS' EXCEPTION

Before the death penalty can be imposed in Kentucky, the prosecution must prove beyond a reasonable doubt the existence of at least one aggravating factor, and the jury must designate any aggravating factors in writing. KRS 532.025(3). The prosecution carried this burden during the sentencing phase of Eldred's first trial. The jury found, in writing, the aggravating factor of murder for hire. This clearly distinguishes the instant case from both *Bullington* and *Rumsey*. In *Rumsey*, the trial court entered written findings denying the existence of each of the statutory aggravating factors. *Rumsey* at 211, 104 S.Ct. at 2310, 81 L.Ed.2d at 171. In *Bullington*, the Missouri sentencing statutes in effect at the time only required the jury to make written findings concerning aggravating factors if the death penalty was imposed. *Bullington* at 434, 101 S.Ct. at 1860, 68 L.Ed.2d at 276 (citing Mo.Rev.Stat. § 565.012.4 (1978)). It is fairly clear from reading *Bullington* and the case below, *State Ex Rel. Westfall v. Mason*, 594 S.W.2d 908 (Mo.1980), that the jury did not include in its verdict any determination as to the existence of aggravating factors. This distinction is extremely important and relevant.

The *Bullington* Court found that Missouri's capital sentencing procedure created

---

1. The *Bullington* Court characterized *Burks* and *Green* as establishing a single exception to the general rule. *Bullington* at 444–45, 101 S.Ct. at 1861–62, 68 L.Ed.2d at 282–83. We have treated the cases as establishing two separate exceptions for clarity's sake. We do not perceive that this substantially affects our analysis of the case, or the conclusion we reach.

sentencing standards by which it could be determined objectively whether the prosecution had proved its case. *Bullington* at 444, 101 S.Ct. at 1860–61, 68 L.Ed.2d at 282. The *Bullington* Court relied on the inclusion of these sentencing standards to distinguish *Bullington* from other cases that have considered the application of double jeopardy principles to sentencing. *Id.* We conclude that the sentencing standards that the *Bullington* Court referred to are the state's burden to prove the existence of aggravating factors beyond a reasonable doubt.

In support of this conclusion, we note that the *Bullington* Court framed the issue before it as "whether the reasoning of *Stroud* is also to apply under a system where a jury's sentencing decision is made at a bifurcated proceeding's second stage at which *the prosecution has the burden of proving certain elements beyond a reasonable doubt before the death penalty may be imposed.*" *Bullington* at 432, 101 S.Ct. at 1854–55, 68 L.Ed.2d at 274 (emphasis added). We find further support in *Rumsey:*

> The trial court entered findings denying the existence of each of the seven statutory aggravating circumstances, and as required by state law, the court then entered judgment in respondent's favor on the issue of death. That judgment, *based on findings sufficient to establish legal entitlement to the life sentence,* amounts to an acquittal on the merits and, as such, bars any retrial of the appropriateness of the death penalty.

*Rumsey* at 211, 104 S.Ct. at 2310, 81 L.Ed.2d at 171 (emphasis added). Thus, in *Rumsey* there was an express finding that the prosecution had failed to prove its case that the death penalty was an appropriate sentence, and there was an implied finding of the same in *Bullington.* However, in this case, there was an express finding by the jury that the prosecution had carried its burden that death was an appropriate sentence for Eldred. Therefore, the insufficiency of evidence exception of *Burks* has no application to this case or to Kentucky's capital sentencing procedure when there has been an express finding of the existence of an aggravating factor beyond a reasonable doubt.

## IMPLIED ACQUITTAL: THE GREEN EXCEPTION

As set forth in *Bullington,* under Missouri's capital sentencing procedure, once a defendant has been found guilty of a capital crime, the trial moves on to the sentencing phase. *Bullington* at 433, 101 S.Ct. at 1855, 68 L.Ed.2d at 275. The jury is only given two sentencing options during the sentencing phase: death or life without the possibility of parole for 50 years. *Id.* at 432, 101 S.Ct. at 1854–55, 68 L.Ed.2d at 275. A sentence of life without the possibility of parole for 50 years is automatically imposed if the jury does not render a verdict of death. *Id.* at 435, 101 S.Ct. at 1856, 68 L.Ed.2d at 276. As set forth in *Rumsey,* Arizona's capital sentencing procedure is indistinguishable from Missouri's for the purposes of this discussion. *Rumsey* at 210, 104 S.Ct. at 2309–10, 81 L.Ed.2d at 171. Thus, during the penalty phase pursuant to both Missouri's and Arizona's capital sentencing procedure, in actuality, the only issue to be decided by the sentencer is whether death is an appropriate punishment. This either/or decision of death or life lends itself fairly well to an analogy between a decision of guilt or innocence by the jury, and, thus, by further analogy to the implied acquittal exception of *Green.* However, the same extended analogy is a poor fit with Kentucky's capital sentencing procedure.

Under Kentucky's capital sentencing procedure, the issue before the jury is not whether death is an appropriate sentence, but rather, the issue is what sentence is appropriate for the defendant. Even if the jury finds the existence of an aggravating factor, the jury may still recommend a sentence within the entire range of possible sentences. *Marlowe v. Commonwealth,* Ky., 709 S.W.2d 424, 432, *cert. denied,* 479 U.S. 946, 107 S.Ct. 427, 93 L.Ed.2d 378 (1986). In other words, the jury is not required to choose between death and not death. Thus, Kentucky's capital sentencing procedure does not have this particular hallmark of a trial on guilt or innocence in common with the capital sentencing procedures found in Missouri and Arizona. This restriction of the sentencer to

only two choices was clearly important to the *Bullington* Court's analysis:

> In contrast, the sentencing procedures considered in the Court's previous cases did not have the hallmarks of the trial on guilt or innocence. In *Pearce, Chaffin,* and *Stroud,* ... the sentencer's discretion was essentially unfettered.... In *Pearce,* the judge had a wide range of punishments from which to choose .... And in *Chaffin,* the discretion given to the jury was extremely broad. That defendant, ... could have been sentenced to death, to life imprisonment, or a prison term of between 4 and 20 years.

*Bullington,* at 439–40, 101 S.Ct. at 1858–59, 68 L.Ed.2d at 279. We note that the sentencing range available under Kentucky's capital sentencing procedure is remarkably similar to that outlined above in *Chaffin.*

Taken to its extreme, the implied acquittal theory results in any sentence being an implied acquittal of any higher sentence. This result is incompatible with *Pearce* and our decision in *Bruce.* We reject any such outcome out of hand. Thus, had Eldred's jury returned a recommendation of 20 years' imprisonment, this recommendation would not have been an implied acquittal of a term of years greater than 20 or an implied acquittal of life. Nor would it have been an implied acquittal of Life–25, even though a sentence of Life–25, like the death penalty, requires a written finding of the existence of at least one aggravating factor beyond a reasonable doubt. *See Monge v. California,* — U.S. ——, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1988), in which the U.S. Supreme Court held that the *Bullington* exception has no application beyond the death penalty.

Consequently, the only conceivable way that Kentucky's capital sentencing procedure can be amenable to an analogy with the implied acquittal exception found in *Green* and extended to capital sentencing *Bullington,* is to view any sentence other than death as a sentence of not death, but at the same time, in order to be consistent with *Pearce,* not to view this same sentence as an implied acquittal of any greater offense other than death. Going back to the above example, a recommended sentence of 20 years would have to be viewed as an implied acquittal of death, but it could not be viewed as an implied acquittal of a term of years greater than 20 years, an implied acquittal of life, or an implied acquittal of Life–25. This result stretches the implied acquittal exception of *Green* to the breaking point. Further, this result cannot be squared with the function and purpose of Kentucky's capital sentencing procedure.

The purpose of Kentucky's capital sentencing procedure is to determine what sentence is appropriate for the defendant. This is the same issue that is present during the penalty phase of a bifurcated, felony trial. The only relevant difference between the two penalty phases is that in a capital case a jury may not consider death or Life–25 unless the Commonwealth meets its burden of proving aggravating factors beyond a reasonable doubt. However, after the Commonwealth has met its burden, the ultimate issue in both penalty phases is identical: What punishment is appropriate for the particular defendant? The difference in the gravity of the offense committed in a capital case and the gravity of the corresponding possible punishment does not in this case create a constitutional distinction.

We acknowledge that death is different from other forms of punishment. However, under Kentucky's capital sentencing procedure, the difference remains one of degree rather than one of kind. This conclusion is supported by *Bullington* itself. *Bullington* did not overrule *Stroud,* in which the death penalty at retrial was at issue. On the contrary, *Bullington* began its discussion with *Stroud* and how the general rule of *Stroud* has survived and been reaffirmed in a number of subsequent and important Supreme Court cases. Thus, we can only conclude that the death penalty has not been exorcised from the general rule, which was first laid down in *Stroud,* that the imposition of a lesser sentence does not prevent the prosecution from seeking a higher sentence at retrial. Therefore, we find no constitutional distinction between death and all the other possible sentencing options available to a jury in the penalty phase of a capital trial in Kentucky. Accordingly, because death is

only one of many possible punishments for the jury to consider during the penalty phase of a capital trial in Kentucky, we find that the implied acquittal exception of *Green* does not apply to Kentucky's capital sentencing procedure set out in KRS 532.025.

We hold that, under Kentucky's capital sentencing procedure, after a conviction of a capital crime and upon a written finding by a jury of a statutory aggravating factor beyond a reasonable doubt, an imposed sentence of less than death at the defendant's first trial does not prevent, in the case of a successful appeal, the Commonwealth from again seeking the death penalty at a subsequent trial. Therefore, the *Bullington* exception does not preclude the Commonwealth from seeking the death penalty at Eldred's new trial.

For the reasons set forth above, the order of the Russell Circuit Court is reversed.

COOPER, GRAVES and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., dissents by separate opinion, with LAMBERT and STUMBO, JJ., joining that dissent.

LAMBERT, J., dissents by separate opinion, with STEPHENS, C.J., and STUMBO, J., joining that dissent.

STEPHENS, Chief Justice, dissenting.

I strongly disagree with the majority opinion. I would affirm the decision of the Russell Circuit Court. In *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), the United States Supreme Court held that Double Jeopardy barred imposition of a death sentence at a second capital murder trial where the jury in the first trial, in a separate penalty phase, had sentenced the defendant to life.

The case at bar is nearly a duplicate of *Bullington*. The majority has erroneously isolated two factors from *Bullington* and identified them as the critical considerations in the Court's decision, to wit: the fact that under Missouri law there are only two options for the jury, and the fact that there is no wide range of penalty options in Missouri.

The procedures used in securing a life sentence in *Bullington*, were characterized as the "hallmarks of a trial on guilt or innocence." 451 U.S. at 439, 101 S.Ct. at 1858. They include: (1) a bifurcated sentencing proceeding, (2) a burden on the state to prove beyond a reasonable doubt that death is the appropriate sentence, (3) production of evidence at the separate sentencing proceeding to meet the burden of proof, and (4) guidance for the jury in its deliberations about the penalty. It is clear to me that these things were present in the case at bar as well.

The guilty verdicts returned by the first jury indicate that the Commonwealth met its burden of proof at the guilt/innocence phase to prove beyond a reasonable doubt that Eldred murdered Mr. Cannon, and that Eldred committed first degree arson.

To obtain a death penalty for Eldred, the Commonwealth had the burden of proving two things beyond a reasonable doubt, (1) the existence of an aggravating factor, and (2) that Eldred should be sentenced to death. The jury found beyond a reasonable doubt that the aggravator of murder for hire existed. Most significantly, the jury was further instructed, "[i]f upon the whole case you have a reasonable doubt whether the Defendant should be sentenced to death, you shall instead fix his punishment at a sentence of imprisonment."

In my view, and according to *Bullington*, the jury acquitted Eldred of the death penalty when it fixed his punishment for murder at a sentence of imprisonment for life without benefit of probation or parole until he has served a minimum of 25 years.

The Commonwealth had its fair opportunity to prove that Eldred deserved to be sentenced to death, and failing to do that it should not be allowed to take a second bite of the apple. Therefore, I would affirm the decision of the Russell Circuit Court.

LAMBERT and STUMBO, JJ., join in this dissenting opinion.

LAMBERT, Justice, dissenting.

To reach the conclusion that *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), does not control this

case, the majority has found it necessary to analyze the constitutional foundations of that controlling decision and upon its view that the foundation decisions do not apply, the majority has determined that *Bullington* itself is inapplicable. This is so despite its own conclusion that the Kentucky capital sentencing procedure and the Missouri capital sentencing procedure are virtually identical. "The only discernable and relevant difference between Kentucky's capital sentencing procedure and the procedures of Missouri and Arizona, is that, under Kentucky's procedure, the jury is not restricted to only two choices in the range of punishment that it may recommend." Op. at 46. The distinction noted by the majority is without any meaningful difference.

In its *Bullington* decision the Supreme Court stated,

> Chief Justice Bardgett, in his dissent from the ruling of the Missouri Supreme Court majority, observed that the sentence of life imprisonment which petitioner received at his first trial meant that "the jury has already acquitted the defendant of whatever was necessary to impose the death sentence." 594 S.W.2d at 922. We agree.

*Id.*, 451 U.S. at 445, 101 S.Ct. at 1861–62.

The Supreme Court of Kentucky should agree also, or at least yield gracefully, to the views of the final arbiter of Federal constitutional law. Eldred has already been tried; and the jury recommended and the court imposed a sentence of life without parole for twenty-five years. He should not have to face the death penalty a second time.

STEPHENS, C.J., and STUMBO, J., join this dissenting opinion.