**David Leroy SKAGGS, Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

No. 2002–SC–0436–MR.

Supreme Court of Kentucky.

Sept. 22, 2005.

Julie Namkin, Thomas M. Ransdell, Assistant Public Advocates, Frankfort, KY, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, David A. Smith, Brian T. Judy, Assistant Attorneys General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

COOPER, Justice.

Herman and Mae Matthews were shot to death in their home on May 6, 1981. In 1982, a Barren Circuit Court jury convicted Appellant, David Leroy Skaggs, of their murders, as well as of robbery and burglary, and he was sentenced to death. The convictions and sentences were affirmed by this Court on direct appeal in *Skaggs v. Commonwealth,* 694 S.W.2d 672 (Ky.1985), *cert. denied, Skaggs v. Kentucky,* 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986). His subsequent Criminal Rule (RCr) 11.42 motion was denied, and that denial was also affirmed on appeal. *Skaggs v. Commonwealth,* 803 S.W.2d 573 (Ky.1990), *cert. denied, Skaggs v. Ken-*

*tucky,* 502 U.S. 844, 112 S.Ct. 140, 116 L.Ed.2d 106 (1991).

In 1994, Appellant filed a motion for a new trial, asserting that he was mentally retarded and therefore ineligible for the death penalty pursuant to KRS 532.130, *et seq.,* specifically, KRS 532.140(1). That motion was denied, and the denial was affirmed on appeal in an unpublished opinion. *Skaggs v. Commonwealth,* No. 94–SC–393–MR (Ky.1995), *cert. denied,* 516 U.S. 856, 116 S.Ct. 158, 133 L.Ed.2d 102 (1995). The reason for the denial was that the statutory scheme in question was enacted effective July 13, 1990,[1] and KRS 532.140(3) states that its provisions "shall apply only to trials commenced after July 13, 1990."

Meanwhile, Appellant filed a petition for a writ of habeas corpus that was subsequently denied by the federal district court. *Skaggs v. Parker,* 27 F.Supp.2d 952 (W.D.Ky.1998). However, the United States Court of Appeals for the Sixth Circuit reversed the denial of the petition because the expert witness who purported to testify to Appellant's mental deficiencies was subsequently determined to be a fraud, and his testimony during the guilt phase of the trial was so "bizarre and eccentric" that it was ineffective assistance of counsel to recall him to provide additional, mitigating evidence during the penalty phase of the trial. *Skaggs v. Parker,* 235 F.3d 261, 269 (6th Cir.2000), *cert. denied, Parker v. Skaggs,* 534 U.S. 943, 122 S.Ct. 322, 151 L.Ed.2d 241 (2001). The case was remanded to the district court "with instructions to issue a writ of habeas corpus vacating Skaggs's death sentence unless the Commonwealth conducts a new penalty proceeding within 180 days of remand." *Id.* at 275.

The new penalty phase trial was conducted April 2–17, 2002, and Appellant was again sentenced to death. He again appeals to this Court claiming, *inter alia,* that the trial court erred in not conducting a hearing prior to retrial to determine if he was mentally retarded and, therefore, ineligible for the death penalty.

The retrial was conducted prior to the United States Supreme Court's decision in *Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), which held that imposition of the death penalty against a mentally retarded offender violates the Eighth Amendment's proscription against cruel and unusual punishment, *id.* at 321, 122 S.Ct. at 2252, and prior to our recent decision in *Bowling v. Commonwealth,* 163 S.W.3d 361 (Ky.2005), defining the procedures for the implementation of *Atkins* in Kentucky. In *Bowling,* we held that *Atkins* was retroactive to any condemned mentally retarded offender tried prior to the effective date of KRS 532.130, *et seq.* 163 S.W.3d at 371. Because the defendant in *Bowling* was tried after the effective date of the exemption statutes and had not raised the mental retardation issue at trial, he was held to have procedurally defaulted the issue. *Id.* at 371–72.

█ Appellant's original trial was held prior to the effective date of the exemption statutes; thus, he could not have procedurally defaulted the mental retardation issue. Furthermore, the retrial of the penalty phase pursuant to the Sixth Circuit's mandate was a trial "commenced after July 13, 1990," thus triggering the provisions of KRS 532.130, *et seq.* We reject the Commonwealth's theory that the retrial was simply a continuation of the original trial commenced in 1982. *See, e.g., Varble v. Commonwealth,* 125 S.W.3d 246, 252 (Ky.2004) ("However, because the

---

1. 1990 Ky. Acts, ch. 488.

error pertains only to sentencing, it does not require a new guilt-phase trial under Count II for possession of a controlled substance in the first degree, but only that a new sentencing phase trial be held on that conviction."); *Hayes v. Commonwealth*, 698 S.W.2d 827, 828 (Ky.1985) ("At the PFO phase of the original trial there was a mistrial. Before the *retrial of the PFO phase commenced* the prosecutor acknowledged that the Commonwealth was required to elect between the .receiving stolen property convictions and theft convictions for the same property.") (emphasis added). The mental retardation issue pertains only to the penalty issue, thus should have been resolved prior to the commencement of the new penalty phase trial.

Because the trial court overruled Appellant's motion for an evidentiary hearing on whether he was entitled to the mental retardation exemption, the issue becomes whether Appellant has produced "some evidence creating a doubt as to whether he is mentally retarded," so as to entitle him to an evidentiary hearing. *Bowling*, 163 S.W.3d at 384. Charles G. Yonts, a certified clinical psychologist, opined at trial that Appellant was mentally retarded. He tested Appellant in 1991 and determined that Appellant's intelligence quotient (I.Q.) was 73, which is above the maximum of 70 required by KRS 532.130 to prove the "significant subaverage intellectual functioning" criterion for mental retardation. However, he also testified that Appellant's school records indicated that Appellant's I.Q. was measured at 64 on an unspecified date. Dr. Stephen Free testified for the prosecution that his testing measured Appellant's I.Q. at 65, but that he believed Appellant was malingering during the test and that Appellant was not mentally retarded. While the evidence was insufficient to entitle Appellant to a directed verdict on the issue, as he claims on appeal, it was sufficient to entitle Appellant

to an evidentiary hearing and a determination of the issue by the trial court. *Compare Bowling*, 163 S.W.3d at 384, where the lowest I.Q. measurement in the record was 79.

■ The situation here is similar to what occurred in *Thompson v. Commonwealth*, 56 S.W.3d 406 (Ky.2001), in which the trial court ordered the defendant to be evaluated for competency but then failed to make a competency determination before accepting the defendant's guilty plea. Instead of reversing the case for a new trial, we remanded it to the trial court with directions (1) to determine whether it was possible to accurately conduct a retrospective competency hearing in that case; and (2) if so, to retrospectively determine whether the defendant was competent at the time he entered his plea; or (3) if not, to conduct a competency hearing and hold a new trial if the defendant was found to be presently competent. If the retrospective competency hearing was possible and the defendant was found to have been competent at the time he entered his plea, the trial court "shall make findings of fact in support of this conclusion in its order . . . ." Either party was allowed to appeal from an adverse ruling on the issue. *Id.* at 410. Application of this procedure to the issue of mental retardation is easier because mental retardation is generally a "permanent, relatively static condition" once the person reaches adulthood and it would be "rare for the condition to recede during the interim between the offense and the execution." *Bowling*, 163 S.W.3d at 377.

Accordingly, we remand this case to the trial court with directions to hold an evidentiary hearing within 120 days from the rendition of this opinion and, pursuant to the guidelines established in *Bowling*, enter findings of fact and conclusions of law

supporting a determination of whether Appellant is mentally retarded. If the trial court determines that Appellant is mentally retarded, it shall order a new penalty phase trial at which death shall be excluded as a possible penalty. The Commonwealth shall have the right to appeal such a determination. *Commonwealth v. Bailey,* 71 S.W.3d 73, 79–80 (Ky.2002). If the trial court determines that Appellant is not mentally retarded, Appellant shall have the right to appeal that determination. Briefing on the matter shall be limited to ten pages by each side and, like the hearing on remand, shall be limited to only those issues addressed in this opinion. The Barren Circuit Court shall notify this Court of its final disposition of this matter within ten (10) days of the entry of its final order. In either event, the appeal will be consolidated with the present appeal, which will be abated pending the resolution of this issue (approximately two-thirds of the remaining thirty issues on appeal are claims of trial error which may not recur in the event of a retrial, or are related solely to the issue of capital punishment).

LAMBERT, C.J.; GRAVES, JOHNSTONE, ROACH, and SCOTT, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion.

Dissenting opinion by Justice WINTERSHEIMER.

I must respectfully dissent from the majority opinion because Skaggs is not entitled to retroactive application of the mental retardation exception. The statute in question directly specifies that it is not to be applied retroactively. KRS 532.140.

In 1981, Skaggs robbed and brutally murdered an elderly couple in their home/ place of business. He repeatedly confessed to police as well as on the witness stand. There is no reasonable question as to his guilt and the crimes committed certainly qualify for the death penalty. Twenty-four years have passed since the commission of the two murders. The defense involving mental retardation was first presented approximately twelve years after he was sentenced to death. This new theory of a retardation defense was intertwined with an ineffective counsel claim which has been previously rejected by this Court on two occasions.

The post-trial retardation defense is based on examinations and tests paid for by the Department of Public Advocacy more than ten years after the initial trial. It first appeared in a third motion by Skaggs for a new trial, which was in fact the fifth collateral attack beyond his direct appeal in state court. The reports by the new experts were stapled to the motion. That motion was denied and another appeal ensued. This Court affirmed the order of the circuit court denying the motion because the claim by Skaggs was without merit.

KRS 532.140(3) provides that "the provisions of KRS 532.135 and 532.140 shall apply only to trials commenced after July 13, 1990." KRS 532.135 contemplates that the mental retardation exemption is to be a pretrial determination. Subsection 1 of that statute requires at least 30 days notice "before trial" of the intent to prove retardation. Section 2 requires the trial judge to resolve such a claim at least ten days "before the beginning of the trial." Subsection 4 refers to this as a "pretrial determination." Skaggs' trial commenced on February 22, 1982. He was found guilty on all counts and a 20–year sentence was imposed for the burglary and on each of the robberies, but the jury could not agree on the punishment for the two murders. In June 1982, the sentencing hear-

ing before a new jury resulted in Skaggs receiving the death penalty for each of the murders.

A three-judge panel of the Sixth Circuit reversed this Court's unanimous decision on the merits of the new retardation defense presented by Skaggs. The Sixth Circuit vacated the 1982 death sentences and remanded the case for resentencing. *Skaggs v. Parker*, 235 F.3d 261 (6th Cir. 2000). Following a third capital sentencing phase, Skaggs was again sentenced to death for both murders.

The April 2002 resentencing was actually a resumption of his 1982 trial, not the commencement of it. It was only a partial resentencing in view of the fact that even the Sixth Circuit allowed the burglary and robbery sentences to be imposed without comment.

*Commonwealth v. Eldred*, 973 S.W.2d 43 (Ky.1998), referred to a capital sentencing proceeding, that is, a capital penalty phase, as a trial-like proceeding. *Eldred, supra,* also recognized that a capital murder defendant whose jury spares his life despite the finding of an aggravating circumstance is not acquitted of the death penalty. Sentencing is a distinctly different and less rigid process than the guilty/not guilty election which precedes it.

Any criminal defendant must await sentencing and entry of a final judgment before he can appeal a jury's verdict of guilt. Appeals are only permitted from final judgments. This decision by the Sixth Circuit panel in *Skaggs, supra,* returned the defendant to the position he had occupied immediately prior to the second 1982 sentencing. As noted by this Court in the unpublished decision in *Skaggs v. Commonwealth*, 1994–SC–0393–MR (1995), his trial was begun on February 23, 1982, and therefore his claim that the death penalty was precluded based on his alleged mental retardation was without merit. It should be clear that the mental retardation exception statute does not apply.

A review of the record in this case demonstrates that the mere claim of mental retardation does not automatically trigger the death penalty exemption statute. Even a brief review of the evidence reveals that Skaggs admits that "Dr. Ravani's report specifically states that 'no signs of mental retardation were present.' " Skaggs' brief concedes that psychologist Engum "did not give Skaggs any intelligence tests, but relied upon Yonts' results." Yonts, the defense psychologist, was inconclusive, indicating that the assessment of the intellectual functioning of Skaggs does not indicate clearly whether he has mental retardation. Skaggs admits in several places in his brief that the defense expert Yonts could reach no further than to suggest that he was "mildly mentally retarded" or "borderline mentally retarded" despite the I.Q. being above 70. It is also of interest to note that K.C.P.C. psychologist Dr. Stephen Free found that Skaggs was malingering and did not find that he was mentally retarded at all.

Any reliance on *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), is misplaced. *Atkins, supra,* observed that "not all people who claim to be mentally retarded will be so impaired as to fall within the range of mentally retarded offenders about whom there is a national consensus."

The majority takes refuge in *Thompson v. Commonwealth*, 56 S.W.3d 406 (Ky. 2001), in which this Court ordered a retrospective competency hearing. In that case, the trial judge had reasonable grounds to believe the defendant was incompetent to plead guilty and thus a competency hearing was needed. The majority also concluded that a retrospective hearing may be permissible under due pro-

cess depending on the facts of a particular case. This case is different.

A careful review of this case clearly indicates that the trial judge was not in error when he declined to entertain additional competency challenges. The facts of each case must control the result produced by this or any court. The standard of review regarding whether a competency hearing is required is whether a reasonable judge should have expressed some doubt with regard to competency. That is clearly not the case in this situation. It is unfortunate that this Court would mechanically apply the *Thompson* result here. Obviously, this Court is substituting its own version of the evidence for that of the trial judge. Therefore, I cannot agree.

Surely the family and friends of the two victims are entitled to some consideration as to the closure of these grisly and senseless murders—24 years have passed. The legal process afforded the convicted killer has been much more than due.